IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

|  |  |
|---|---|
| DWIGHT M. F., ) | |
| Plaintiff, ) | |
| v. ) | Case No. 4:21cv128 |
| KILOLO KIJAKAZI, ) Acting Commissioner of Social Security, ) | |
| Defendant. ) | |

### REPORT AND RECOMMENDATION

Plaintiff Dwight M. F. ("Plaintiff") filed this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of Defendant Kilolo Kijakazi, the Acting Commissioner of the Social Security Administration ("the Commissioner"), denying Plaintiff's claim for disability insurance benefits ("DIB"), and supplemental security income ("SSI") under the Social Security Act. This action was referred to the undersigned United States Magistrate Judge ("the undersigned") pursuant to 28 U.S.C. § 636(b)(1)(B)–(C), Federal Rule of Civil Procedure 72(b), Eastern District of Virginia Local Civil Rule 72, and the April 2, 2002, Standing Order on Assignment of Certain Matters to United States Magistrate Judges. ECF No. 10.

Presently before the Court are the parties' cross motions for summary judgment, ECF Nos. 17, 20. After reviewing the briefs, the undersigned makes this recommendation without a hearing pursuant to Federal Rule of Civil Procedure 78(b) and Eastern District of Virginia Local Civil Rule 7(J). For the following reasons, the undersigned **RECOMMENDS** that Plaintiff's Motion for Summary Judgment, ECF No. 17, be **DENIED**, the Commissioner's Motion for Summary

Judgment, ECF No. 20, be **GRANTED**, the final decision of the Commissioner be **AFFIRMED**, and that this matter be **DISMISSED WITH PREJUDICE**.

## I. PROCEDURAL BACKGROUND

Plaintiff protectively filed applications for DIB and SSI on October 18, 2018, and September 24, 2019, respectively, alleging disability due to HIV, cluster migraines, arthritis, depression, and anxiety. R. at 77, 116.[1] Plaintiff's applications were initially denied on February 4, 2019, and again denied upon reconsideration on February 7, 2020. R. at 94, 114, 131. On March 23, 2020, Plaintiff requested a hearing before an administrative law judge. R. at 182.

A hearing was held on December 18, 2020, at which Plaintiff appeared with counsel before Administrative Law Judge Patrick S. Cutter ("the ALJ"). R. at 58–75. Both Plaintiff and an impartial vocational expert testified at the hearing. R. at 61–74. On January 26, 2021, the ALJ issued a decision finding Plaintiff not disabled. R. at 36–49. Plaintiff filed a request with the Appeals Council to reconsider the ALJ's decision, which was denied on July 29, 2021, making the ALJ's decision the final decision of the Commissioner. R. at 1–3.

Having exhausted his administrative remedies, on October 1, 2021, Plaintiff filed a Complaint for judicial review of the Commissioner's decision. ECF No. 1. On April 5, 2022, Plaintiff filed a motion for summary judgment and accompanying memorandum in support. ECFNos. 17–18. On May 4, 2022, the Commissioner filed a motion for summary judgment and brief in support. ECF Nos. 20–21. Plaintiff filed a reply on May 25, 2022. ECF No. 22. Because the motions are fully briefed, the matter is now ripe for recommended disposition.

## II. RELEVANT FACTUAL BACKGROUND

The Record included the following factual background for the ALJ to review:

---

[1] "R." refers to the certified administrative record that was filed under seal on December 2, 2021. ECF No. 9, pursuant to Eastern District of Virginia Local Civil Rules 5(B) and 7(C)(1).

Plaintiff was fifty-four years old and closely approaching advanced age at the time of his alleged disability onset date of July 30, 2018. R. at 76. Plaintiff completed the ninth grade, does not have a driver's license, and last worked in July 2018. R. at 61–62.

### A. Plaintiff's Medical Records Relevant to Alleged Physical Impairments[2]

Plaintiff presented to Sentara Careplex Hospital on August 1, 2018, complaining of back pain after being in a car accident the previous day. R. at 692–93. Plaintiff was discharged with instructions to take ibuprofen and follow up with his primary care provider. R. at 696. Plaintiff returned to the emergency department later that week complaining of back pain. R. at 689. Plaintiff was discharged with prescriptions for lidocaine, naproxen, and valium. R. at 691.

Plaintiff began physical therapy on August 13, 2018. R. at 752. There, his strength was rated a four out of five, and his sensation was grossly intact. R. at 752. He continued to tolerate the treatment well through August 21, 2018. R. at 753–54.

On August 27, 2018, and MRI of Plaintiff's cervical spine revealed minor disc disease, spondylosis at the C5/C6 vertebrae, no cord compression, and loss of the normally seen lordosis at the C5 and C6 vertebrate, which was gentle and without spondylolisthesis. R. at 657. The MRI additionally revealed facet arthropathy principally in the upper cervical spine, advanced on the right side at the C3/C4 vertebrae, and lesser at other levels. R. at 657. The interpreting physician noted that this could cause pain, but no major foraminal stenosis was evident. R. at 657.

Following the 2018 motor vehicle accident, Plaintiff sought treatment for diffuse head pain and headaches, and neck pain. R. at 1148–49, 1151. In September 2018, he underwent a nerve block procedure to help his headaches. R. at 1147–48. Throughout his doctors' visits in 2018, Plaintiff continued to complain of headaches. R. at 1137–45.

---

[2] Because Plaintiff's mental impairments are not at issue, the Court does not address Plaintiff's medical records relating to his mental impairments.

3

In August 2019, Plaintiff was involved in a second motor vehicle accident. R. at 1009. The collision caused Plaintiff to fracture his right clavicle and his rib. R at 1009–1010, 1309. At a follow up appointment, Plaintiff's doctor noted thoracic and lumbar strain symptoms. R. at 1366. Upon physical examination, Plaintiff had reduced lumbar range of motion, lumbar spasms bilaterally, and he was tender to the touch on his spine. R. at 1366. However, Plaintiff did not have any radicular pain or paresthesia and his gait and motor function were normal. R. at 1366. A CT scan of Plaintiff's cervical spine revealed "no acute cervical spine abnormality." R at 1018. Plaintiff's doctor referred him to physical therapy and advised him that his symptoms would improve with time. R. at 1366.

Plaintiff attended occupational therapy in November 2019. R. at 1116. Plaintiff complained of stiffness of the right shoulder joint and pain in the right shoulder. R. at 1114–17. At that time, his mother was assisting him with his activities of daily living. R. at 1117.

Plaintiff followed up with the Riverside Neurosurgery and Spine Specialists in Newport News in February 2020. His doctor described his pain in his thoracic and lumbar spine area as "improved but persistent." R. at 1298. His pain was primarily aggravated by bending and position changes, however he did feel some improvement with Gabapentin and a Lidoderm patch. R. at 1298. In June 2020, Plaintiff continued to report throbbing pain in his lower back, and also complained of numbness on the side of his thighs bilaterally. R. at 1351. He was discharged from physical therapy due to no progress. R. at 1351. Plaintiff reported that Gabapentin and a lidocaine patch helped his symptoms. R. at 1351. Upon physical examination, Plaintiff had back stiffness, but demonstrated full strength and sensation in his lower extremities. R. at 1354–55. His doctor noted that Plaintiff "report[ed] extreme pain with very light touch to his low back, seems out of

proportion to the pressure applied," and that no imaging explained the severity of his symptoms in his lower back. R. at 1354–55.

In October 2020, Plaintiff began treatment with Riverside Neurosurgery and Spine Specialists in Newport News. R. at 1412. At that time, he had a gait problem and was using a cane. *Id.* He demonstrated some weakness in his light lower extremities and decreased sensation in his bilateral lower extremities. R. at 1412–15.

### B. Relevant Evaluations Completed by State Agency Examiner

State agency examiner Joseph Duckwall, M.D., reviewed Plaintiff's records and found that Plaintiff could occasionally lift and carry fifty pounds; frequently lift and carry twenty-five pounds; stand or walk six hours in an eight-hour workday; frequently climb ramps and stairs, stoop, kneel, crouch, crawl; and never climb ropes and scaffolds. R. at 90. He also found that Plaintiff could reach overhead only frequently. R. at 91.

### C. Plaintiff's Testimony at ALJ Hearing

At the ALJ hearing, Plaintiff testified about his impairments. Plaintiff was in a car accident, and his impairments either began or worsened following the accident. R. at 62–68. Plaintiff stated that he constantly experiences neck pain that travels to his back, and shooting pain in his lower back. R. at 62, 63. His pain is worse when lifting, sitting, or standing for too long. R. at 63. Plaintiff testified he can stand for about fifteen minutes at a time. R. at 67. Plaintiff also stated he experiences right lower extremity pain and weakness, and the pain has caused him to fall in the past. R. at 64. Because of this, he began using a cane in 2018. R. at 66. Plaintiff additionally suffers from neuropathy, which began before the car accident. R. at 67. The neuropathy causes him to feel numbness and pain in his fingers and feet. R. at 68. He also suffers from cluster migraines and headaches. R. at 64. Plaintiff feels some relief of his physical symptoms with

5

medication, which his mother helps him manage. R. at 64–66. Plaintiff also testified he has depression, and he experiences anxiety, nervousness, and sometimes hears voices. R. at 66.

As for his daily activities, Plaintiff testified that he mostly watches TV, but sometimes walks around his neighborhood or around the corner. R. at 66. He testified that he could lift a pillow, and stand for about fifteen minutes at a time. R. at 67.

### III. THE ALJ'S DECISION

To determine if the claimant is eligible for benefits, the ALJ conducts a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520, 416.920; *Mascio v. Colvin*, 780 F.3d 632, 634–35 (4th Cir. 2015) (summarizing the five-step sequential evaluation). At step one, the ALJ considers whether the claimant has worked since the alleged onset date, and if so, whether that work constitutes substantial gainful activity. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). At step two, the ALJ considers whether the claimant has a severe physical or mental impairment that meets the duration requirement. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). At step three, the ALJ determines whether the claimant has an impairment that meets or equals the severity of a listed impairment set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant does not have an impairment that meets or equals the severity of a listed impairment, the ALJ will determine the claimant's residual functional capacity, that is, the most the claimant can do despite her impairments. §§ 404.1545(a), 416.945(a). At step four, the ALJ considers whether the claimant can still perform past relevant work given his or her residual functional capacity. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). Finally, at step five, the ALJ considers whether the claimant can perform other work. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

The ALJ will determine the claimant is not disabled if: they have engaged in substantial gainful activity at step one; they do not have any severe impairments at step two; or if the claimant

can perform past relevant work at step four. *See Jackson v. Colvin*, No. 2:13cv357, 2014 WL 2859149, at *10 (E.D. Va. June 23, 2014). The ALJ will determine the claimant is disabled if the claimant's impairment meets the severity of a listed impairment at step three, or if the claimant cannot perform other work at step five. *Id.*; *see also Mascio*, 780 F.3d at 634–35 (noting the ALJ will only determine the claimant's residual functional capacity if the first three steps do not determine disability).

Under this sequential analysis, the ALJ made the following findings of fact and conclusions of law:

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date of July 30, 2018. R. at 38. At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease of the cervical spine, migraines, and polyneuropathy. R. at 39. At step three, the ALJ considered Plaintiff's severe impairments and found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. R. at 40–41.

After step three, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform light work, with the following limitations: he can frequently climb ramps or stairs, stoop, kneel, crouch or crawl; he can frequently overhead reach bilaterally; he can never climb ropes, ladders, ropes, or scaffolds; he can occasionally work at unprotected heights or contact moving mechanical parts. R. at 42.

In making this determination, the ALJ considered "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. § 404.1529 and SSR 16-3p." R. at 42.

At step four, the ALJ determined that Plaintiff was capable of performing past relevant work given his RFC. R. at 46–47. First, the ALJ determined Plaintiff was capable of performing his past relevant work as a stock checker (retail), which is considered light work as actually and generally performed. R. at 46. Second, the ALJ determined Plaintiff was capable of performing his past relevant work as a dishwasher/kitchen helper, which is considered medium work, but light work as actually performed. R. at 46.

As an alternative finding, the ALJ proceeded to step five and considered whether Plaintiff could perform other jobs existing in significant numbers in the national economy in light of his age, education, work experience, and RFC. R. at 47–48. The ALJ concluded that before Plaintiff turned fifty-five, there were other jobs existing in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of air purifier servicer, electrical accessories assembler, and garment bagger. R. at 48. Thus, the ALJ determined that Plaintiff was not disabled from the alleged onset date, July 30, 2018, through the date of his decision, January 26, 2021. R. at 48–49.

## IV. STANDARD OF REVIEW

Under the Social Security Act, the Court's review of the Commissioner's final decision is limited to determining whether the decision was supported by substantial evidence in the record and whether the correct legal standard was applied in evaluating the evidence. *See* 42 U.S.C. § 405(g); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "evidence as a reasonable mind might accept as adequate to support a conclusion." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Britt v. Saul*, No. 19-2177, 2021 WL 2181704, at *2 (4th Cir. May 28, 2021) (quoting *Craig*, 76 F.3d

at 589). The Court looks for an "accurate and logical bridge" between the evidence and the ALJ's conclusions. *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018); *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016); *Mascio v. Colvin*, 780 F.3d 632, 637 (4th Cir. 2015).

In determining whether the Commissioner's decision is supported by substantial evidence, the Court does not "re-weigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the [Commissioner]." *Craig*, 76 F.3d at 589. If "conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for the decision falls on the [Commissioner] (or the [Commissioner's] delegate, the ALJ)." *Id.* (quoting *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987)). Accordingly, if the Commissioner's denial of benefits is supported by substantial evidence and applies the correct legal standard, the Court must affirm the Commissioner's final decision. *Hays*, 907 F.2d at 1456.

## V. ANALYSIS

Plaintiff's appeal to this Court raises two challenges to the ALJ's decision. Plaintiff argues that the ALJ erred by finding that Plaintiff has the RFC to perform light exertional work, and that the determination is not supported by substantial evidence. *Id.* Plaintiff also argues that the ALJ erred by making alternative findings at step five. ECF No. 18 at 7.

### A. The ALJ Did Not Err in Finding Plaintiff Could Perform Light Work, and the ALJ's Determination is Supported by Substantial Evidence.

Plaintiff argues that the ALJ erred by finding he had the RFC to perform light work. ECF No. 18 at 10. Plaintiff contends the ALJ failed to perform a function-by-function analysis, and that the ALJ improperly evaluated Plaintiff's exertional level without support from a medical professional. *Id.* at 10–15. Plaintiff argues that the ALJ should have ordered Plaintiff undergo "an in-person interview and comprehensive physical examination so as to medically assess Plaintiff's function-by-function physical limitations." *Id.* at 11–12. In response, the

9

Commissioner argues that the ALJ applied the proper legal standard in evaluating Plaintiff's RFC, and the ALJ's RFC determination is supported by substantial evidence. ECF No. 21 at 13–19.

*1) Substantial Evidence Supports the ALJ's Decision that Plaintiff Can Perform Light Work.*

After step three of the sequential analysis, the ALJ must determine the claimant's RFC. §§ 404.1520(a)(4), 416.920(a)(4). RFC is defined as "the most" a claimant "can still do despite [his or her] limitations." §§ 404.1545(a)(1), 416.945(a)(1). In making the RFC determination, the ALJ must consider "all the relevant medical and other evidence" in the record and incorporate any impairments supported by objective medical evidence, and those impairments based on the claimant's credible complaints. §§ 404.1545(a)(3), 416.945(a)(3); *Mascio v. Colvin*, 780 F.3d 632, 635 (4th Cir. 2015) (citing SSR 96–8p, 1996 WL 374184 (July 2, 1996)). In determining the claimant's RFC, the ALJ must "identify the individual's functional limitations" and then assess the individuals "work-related abilities on a function-by-function basis," including the claimant's physical abilities, mental abilities, and any other work-related abilities affected by his or her impairments. *Mascio*, 780 F.3d at 636. The ALJ must include a "narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.* The ALJ also must "build an accurate and logical bridge from the evidence to [the ALJ's] decision" in order to allow the reviewing court to evaluate the ALJ's decision. *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)).

Here, substantial evidence supports the ALJ's determination that Plaintiff can perform work at the light exertional level. In determining Plaintiff's RFC, the ALJ analyzed Plaintiff's testimony and medical records related to pain in his neck and back, as well as neuropathy. R. at 43–44, 46. The ALJ noted that Plaintiff testified about his neck pain, which worsens when he sits

for too long, and his back pain, which does not allow him to lift anything and worsens with sitting or standing for prolonged periods of time. R. at 42.

In reviewing Plaintiff's medical records, the ALJ found that Plaintiff's neck and back conditions are stable, and that medication provides some relief for his neuropathy. R. at 43. The ALJ reviewed Plaintiff's imaging reports throughout the relevant period, and noted that in August 2018, imaging of Plaintiff's cervical spine showed: facet arthropathy at multiple levels, including advanced facet arthropathy on the right at C3-C4, but no major foraminal or central canal stenosis; minor disc disease spondylosis at the C-5 and C-6 and C-6 and C-7 with no cord compression and no spondylolisthesis. R. at 43 (citing R. at 656–57). The ALJ reviewed Plaintiff's neurologist's analysis of that imaging, which showed mild disc bulges without any spinal cord contact or compression. R. at 43 (citing R. at 750). The ALJ also reviewed Plaintiff's imaging report one year later in August 2019, which showed moderate degenerative changes to Plaintiff's cervical spine, but no significant canal stenosis. R. at 43 (citing R. at 1010, 1018). The ALJ finally noted Plaintiff's September 2018 thoracic and lumbar spine x-rays, which were essentially normal with no evidence of fracture or acute findings. R. at 43 (citing R. at 1124).

The ALJ recognized that, with the exception of one exam in October 2020, Plaintiff's medical examinations revealed relatively few physical problems. R. at 43–44. The ALJ detailed medical records that noted although Plaintiff reported weakness in his legs and problems with his gait, his physical examinations demonstrated that he arose independent from a chair, was able to walk on his toes and heels and perform tandem without difficulty in September 2019 and February 2020. R. at 44 (citing R. at 1126, 1302). The ALJ noted that on one occasion, Plaintiff had a reduced lumbar range of motion, but his motor function was normal in the lower extremities and his reflexes were normal. R. at 44 (citing R. at 1126). On other occasions, Plaintiff's motor

function was normal in his nerves and lower extremities. R. at 44 (citing R. at 1308, 1302, 1354). The ALJ further recollected Plaintiff's doctor's findings that Plaintiff reported extreme pain even with very light touch to his low back, which seemed out of proportion to the pressure applied. R. at 44 (citing R. at 1354). That same doctor found Plaintiff's thoracic radiographs unremarkable, and his lumbar radiographs generally unremarkable with the caption of "very mild" arthritic changes at L5-S1. R. at 44 (citing R. at 1355).

The ALJ recognized that in October 2020, Plaintiff did have one exam which demonstrated multiple abnormalities including weakness in his right lower extremity, decreased patellar and Achilles reflex on the right, positive Romberg, decreased sensation in his bilateral lower extremities, positive straight leg raise to the right lower extremity, tenderness to the bilateral trochanter bursa, pain with lumbar flexion/.extension, tenderness to palpation in the mid lower back and slightly antalgic gait with reduced right toe clearance. R. at 44 (citing R. at 1415).

The ALJ also recognized that Plaintiff sometimes used a cane for ambulation, but the medical evidence "containe[ed] no persuasive documentation" that the cane was medically necessary or prescribed by a physician. R. at 44. The ALJ noted that pursuant to his function report, Plaintiff was able to partake in certain activities of daily living including going for walks, taking baths, preparing his meals, shopping in grocery stores (sometimes, with a riding cart), and going to church. R. at 44 (citing R. at 310–17).

After reviewing Plaintiff's medical records and testimony, the ALJ concluded that Plaintiff could perform light work with some postural limitations due to his cervical spine disorder. R. at 44. The ALJ further noted that the state agency medical consultant's findings supported the RFC determination. R. at 44. The ALJ noted that Dr. Joseph Duckwall found that Plaintiff could perform medium work, but the ALJ reduced Plaintiff's RFC to light work based on Plaintiff's

testimony. R. at 45. Overall, the ALJ concluded that the RFC was supported by Plaintiff's "course of treatment, response to treatment, imaging studies, physical and mental status examinations, and activities." R. at 46.

In light of the ALJ's robust analysis of the record in the decision, the ALJ pointed to substantial evidence—that is, "evidence as a reasonable mind might accept as adequate"—to support his determination that Plaintiff had the RFC to perform light work. *Craig*, 76 F.3d at 589. Further, the ALJ sufficiently conducted a "function-by-function" analysis by analyzing Plaintiff's medical records, and finding that his treatment notes "do not document any work preclusive functional limitations." R. at 44. The ALJ noted he limited Plaintiff to light work, as opposed to medium work recommended by the state agency examiner, based on Plaintiff's testimony, R. at 45, and added postural limitations, overhead reaching limitations due to cervical spine disorder, and workplace environmental limitations—which were supported by the state agency medical consultants' findings. R. at 44. Accordingly, the ALJ's determination that Plaintiff could perform light work is supported by substantial evidence, and the ALJ did not err in crafting Plaintiff's RFC.

   2) *Plaintiff's Specific Arguments Regarding the ALJ's Error in Finding Plaintiff Can Perform Light Work are Without Merit.*

Plaintiff's specific arguments regarding a lack of substantial evidence to support Plaintiff's RFC are without merit. Plaintiff first argues that the ALJ's RFC determination lacks support because a medical professional did not assess Plaintiff's functional limitations. ECF No. 18 at 10–13. However, a claimant's RFC determination is ultimately "an administrative assessment made by the Commissioner based on all the relevant evidence in the case record." *Felton-Miller v. Astrue*, 459 F. App'x 226, 230-31 (4th Cir. 2011) (citing §§ 404.1546(c), 416.946(c)). An ALJ is "not required to obtain an expert medical opinion as to [a claimant's] RFC." *Id.* And importantly, an RFC determination in terms of functional exertional levels is an issue reserved to the

13

Commissioner, and would not be considered even if it were in the record. §§ 404.1520(c)(3)(v), 416.920b(c)(3)(vi). Accordingly, an ALJ does not inherently err by determining a Plaintiff's RFC without a specific medical opinion. *See Lawrence v. Colvin*, No. 1:13CV70, 2015 WL 3453331, at *4 (M.D.N.C. May 29, 2015) (noting that a claimant has the burden to produce evidence to establish his RFC, and an ALJ has no obligation to obtain a medical opinion in determining the RFC). Instead, the ALJ is "free to craft an RFC based on all the relevant evidence in the record," so long as the ALJ does not "*substitute* his or her own lay opinion for a medical expert's opinion." *Derrick W. v. Kijakazi*, No. 5:20cv55, 2022 WL 488067, at *5 (W.D. Va. Feb. 17, 2022) (cleaned up), *report and recommendation adopted*, 2022 WL 780416 (W.D. Va. Mar. 14, 2022).

Here, the ALJ did not substitute his own lay opinion for a medical expert's opinion, but rather crafted Plaintiff's RFC based on the available evidence in the record. R. at 42–46. Moreover, state agency consultant Dr. Joseph Duckwall assessed each of Plaintiff's functional limitations and found that Plaintiff could perform medium work. R. at 90–91. However, the ALJ reduced Plaintiff's RFC to light work based on Plaintiff's testimony. R. at 45. Thus, although there was no medical opinion from one of Plaintiff's providers expressly stating Plaintiff could perform light work, the ALJ appropriately considered the entirety of the record, including the objective medical evidence, Plaintiff's testimony, and the opinion of Dr. Duckwall.

Second, Plaintiff argues that the ALJ's decision lacks substantial evidence because the ALJ did not explicitly explain "which of the two light exertional profiles was applicable to Plaintiff." ECF No. 18 at 12. In determining a claimant's RFC, an ALJ must determine the persons physical exertion limitations. §§ 404.1567, 416.967. The social security regulations define light work as involving "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." *Id.* Further, light work "requires a good deal of walking or standing,

or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." *Id.* However, there is no requirement in the regulations that the ALJ specifically state whether Plaintiff can perform "a good deal of walking or standing" or a job that involves "sitting most of the time with some pushing and pulling of arm or leg controls." § 404.1567. Rather, a claimant must be able to "lift[] no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds," and the claimant "must have the ability to do substantially all of these activities." *Id.* Here, the ALJ did just that by finding that Plaintiff could perform light work with postural limitations, overhead reaching limitations, and workplace environmental limitations. R. at 44. The ALJ appropriately relied on the VE's testimony that, in accordance with that RFC, Plaintiff would be able to perform his past relevant work as a stock checker and dishwasher/kitchen helper, which were classified as "light" as actually performed. R. at 46, 69–71; *see also Stacey D. R. v. Kijakazi*, No. 3:20cv858, 2022 WL 420393, at *11 (E.D. Va. Jan. 25, 2022) (noting that "the regulations provide that an ALJ may use the services of a vocational expert or look to the DOT when determining the demands of Plaintiff's past relevant work and whether her residual functional capacity allows her to perform such work") (citing §§ 404.1560(b)(2), 416.960(b)(2)), *report and recommendation adopted*, 2022 WL 414382 (E.D. Va. Feb. 10, 2022). Thus, the ALJ did not err by failing to explicitly identify which type of light work Plaintiff can perform.

In sum, Plaintiff's specific arguments regarding why the ALJ's decision lacks substantial evidence are not persuasive, and the ALJ did not err in finding that Plaintiff has the RFC to perform light work.

### B. The ALJ Did Not Err by Making An Alternative Finding at Step Five.

Plaintiff alleges that the ALJ erred because his step five analysis that Plaintiff could perform other work existing in the national economy before his fifty-fifth birthday and his step

15

four finding that Plaintiff could perform his past relevant work are two alternative and inconsistent assessments of Plaintiff's case. ECF No. 18 at 7. In conjunction with that argument, Plaintiff contends that the ALJ's step five analysis is an error because Plaintiff turned fifty-five—the advanced age category—during the relevant period, rendering him automatically disabled pursuant Rule 202.01 of the Medical Vocational Guidelines. *Id.* at 7–9. In response, the Commissioner argues that the ALJ's findings at steps four and five are not inconsistent, and that ALJs are permitted to rely on alternative findings.

At step four in the sequential analysis, the ALJ must determine whether the claimant can perform his or her past relevant work. If the claimant can perform past relevant work, then the claimant is not disabled. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). Courts in the Fourth Circuit frequently acknowledge an ALJ may make a step four finding that results in a "not disabled" determination and continue the analysis to step five of the analysis. *Nixon v. Astrue*, No. 2:11cv122, 2012 WL 589200, at *9 (E.D. Va. Jan. 18, 2012), *report and recommendation adopted*, 2012 WL 589289 (E.D. Va. Feb. 22, 2012) ("Although the ALJ determined that Ms. Nixon was capable of performing past relevant work at step four, he went on to step five, at which he determined that she was capable of adjusting to other work that exists in significant numbers in the national economy."); *Northrup v. Saul*, No. 1:19-CV-00211-RJC, 2020 WL 3802717, at *4 (W.D.N.C. July 7, 2020) (noting that the ALJ concluded that the plaintiff could perform his past relevant work but continued to step five and alternatively found that the plaintiff could also perform other work that existed in significant numbers in the national economy); *see also Tina K. v. Kijakazi*, No. 3:20cv455, 2021 WL 7368335, at *6 (E.D. Va. Oct. 19, 2021), *report and recommendation adopted*, 2022 WL 696467, at *1 (E.D. Va. Mar. 8, 2022) (noting that the ALJ's step five analysis was "unnecessary" because the ALJ found the plaintiff "not disabled" at step

four); *Moore v. Colvin*, No. 1:14CV381, 2015 WL 4879267, at *6 (M.D.N.C. Aug. 14, 2015), *report and recommendation adopted*, No. 1:14CV381, 2015 WL 5674896 (M.D.N.C. Sept. 25, 2015) (declining to analyze the plaintiff's claim of ALJ error at step five where the ALJ's decision at step four that plaintiff could perform past relevant work was supported by substantial evidence).

Here, the ALJ concluded at step four that Plaintiff could perform his past relevant jobs of stock checker and dishwasher/kitchen helper given his RFC. R. at 46–47. The ALJ went on to step five and found that before Plaintiff turned fifty-five, he could also perform other jobs that existed in significant numbers in the national economy. R. at 48.

Plaintiff's contention that the ALJ's findings are inconsistent is correct, but also irrelevant. The ALJ's finding at step four that Plaintiff can perform his past relevant work renders Plaintiff "not disabled" under the social security regulations. §§ 404.1520(a)(4)(iv) ("If you can still do your past relevant work, we will find that you are not disabled."), 416.920(a)(4)(iv) (same). However, the ALJ's finding at step five—that Plaintiff could perform other work existing in significant numbers in the national economy *before* his fifty-fifth birthday, but presumably not *after* his fifty-firth birthday—would have resulted in a "disabled" finding pursuant to the Rule 202.01 Medical Vocational Guidelines. §§ 404.1520(a)(4)(v) ("If you can make an adjustment to other work, we will find you not disabled. If you cannot, we will find you disabled."), 416.920(a)(4)(v) (same). The ALJ's finding at step five results in a "disabled" finding, because Plaintiff did in fact turn fifty-five during the relevant period, and thus would automatically be considered disabled under Rule 202.01. It is simply irrelevant to the step five analysis that Plaintiff could perform other work before he turned fifty-five years old. Thus, Plaintiff is correct that the ALJ's findings at step four and step five are inconsistent with one another—the step four analysis

results in a finding that Plaintiff is "not disabled," and the step five analysis results in a finding that Plaintiff is "disabled."

As cited in the cases above, ALJs frequently make alternative findings at step four and five—and find that a Plaintiff is capable of performing past relevant work and also capable of performing other work that exists in significant numbers in the national economy. However, the Commissioner did not cite, nor was the Court able to find, any cases similar to this—where the ALJ made *inconsistent* findings at steps four and five—where the step four analysis results in a not disabled determination and the step five analysis results in disabled determination.

However, although the ALJ's findings were inconsistent—and frankly in the Court's view, unnecessary and confusing—the ALJ did not err. No regulations or case law suggest that making such alternative and inconsistent findings is an error by the ALJ. Standing alone, the ALJ's finding at step four that Plaintiff can perform his past relevant work is sufficient to find Plaintiff "not disabled." *Northrup*, 2020 WL 3802717, at *4. The fact that Plaintiff could also perform other work before his fifty-fifth birthday but would be considered disabled pursuant to Rule 202.01 is simply irrelevant because substantial evidence supported the ALJ's conclusion at step four that Plaintiff is capable of performing his past relevant work.

The Court questions the purpose or wisdom in making an alternative finding at step five that is inconsistent with a finding at step four, but the Court is not tasked with second-guessing the ALJ's decision. Rather, this Court's inquiry is limited to whether the ALJ's findings are "supported by substantial evidence and were reached through application of the correct legal standard." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (internal quotations and citations omitted). Because substantial evidence supports the ALJ's RFC determination as

explained above (*see* Section V.A., *supra*), and the ALJ did not apply an incorrect legal standard, there is no error requiring remand.

## VI. RECOMMENDATION

Because substantial evidence supports the Commissioner's decision and the correct legal standard was applied, the undersigned **RECOMMENDS** that Plaintiff's Motion for Summary Judgment, ECF No. 17, be **DENIED**, the Commissioner's Motion for Summary Judgment, ECF No. 20, be **GRANTED**, the final decision of the Commissioner be **AFFIRMED**, and that this matter be **DISMISSED WITH PREJUDICE.**

## VII. REVIEW PROCEDURE

By receiving a copy of this Report and Recommendation, the parties are notified that:

1. Any party may serve on the other party and file with the Clerk of the Court specific written objections to the above findings and recommendations within fourteen days from the date this Report and Recommendation is forwarded to the objecting party, *see* 28 U.S.C. § 636(b)(1)(C) and Federal Rule of Civil Procedure 72(b), computed pursuant to Federal Rule of Civil Procedure Rule 6(a). A party may respond to another party's specific written objections within fourteen days after being served with a copy thereof. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

2. A United States District Judge shall make a *de novo* determination of those portions of this Report and Recommendation or specified findings or recommendations to which objection is made. The parties are further notified that failure to file timely specific written objections to the above findings and recommendations will result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984), *cert. denied*, 474 U.S. 1019 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984).

The Clerk is **DIRECTED** to forward a copy of this Report and Recommendation to the counsel of record for Plaintiff and the Commissioner.

/s/ Lawrence R. Leonard
United States Magistrate Judge

Norfolk, Virginia
December 12, 2022